[Civil No. 4560.   Filed April 26, 1943.]

[136 Pac. (2d) 456.]

MEMORY GROVE CEMETERY, INC., a Corporation, Appellant, v. MELVIN R. TAYLOR and ANITA ROSE TAYLOR, His Wife, Appellees.

Mr. William C. Fields, for Appellant.

Messrs. Langmade & Langmade, for Appellees.

ROSS, J.—This action was brought by Memory Grove Cemetery, Inc., a corporation, against Melvin R. Taylor and Anita Rose Taylor, husband and wife, upon

two causes of action, the first being for $10,082 damages for breach of warranty of title to land sold by defendants to plaintiff, and the second seeking to have a mortgage on such land and the note secured by it surrendered and the mortgage declared no lien or cloud on the premises.

The defense, as gathered from the answer, was to the effect (1) that the encumbrances of which complaint was made were of record and were assumed by plaintiff, and (2) that the defendants had sold the premises mentioned in plaintiff's complaint, reserving the right and power to rescind in case of a breach of any of the stipulations contained in the contract of sale.

Plaintiff was organized by E. O. Castle and Charlie W. Clark, who were in fact the promoters of the Memory Grove Cemetery, Inc. Associated with them in promoting the enterprise was one George Golfinos, of Phoenix, who, from what we glean from the record, advanced whatever small amounts of cash that were necessary to organize the plaintiff and to secure to it the title of the Taylor tract of land. Early in the organization, to wit, on June 25, 1938, as the minutes of the corporation show, the stock of the company (100,000 shares of no par value) was distributed as follows:

| | | |
|---|---|---|
| Melvin R. Taylor | 23,000 | shares |
| E. O. Castle | 19,250 | " |
| Charlie W. Clark | 19,250 | " |
| Roy J. Hockery | 19,250 | " |
| George Golfinos | 19,250 | " |

The record fails to reflect what, if anything, was received for the last four of the above certificates. The certificate to Taylor for 23,000 shares was in part payment of the land. Later, on May 27, 1939, the board of directors of the corporation, acting through Castle and Golfinos, majority members thereof, by resolution amended the articles of incorporation cutting the cap-

ital stock from 100,000 shares of no par value to 1,000 shares of no par value and providing that such shares "shall be paid for by cash, or real or personal property, or services, or any other right or thing of value." Whether this amendment was properly authenticated and published the record fails to disclose. Section 53-303, Arizona Code 1939. The amendment to the articles was evidently intended to conform with section 6, Article XIV of the State Constitution, reading:

"No corporation shall issue stock, except to *bona fide* subscribers therefor or their assignees; nor shall any corporation issue any bond, or other obligation, for the payment of money, except for money or property received or for labor done. . . . "

There is no showing that the stock issued to Castle, Clark, Hockery or Golfinos was paid for either in money or property received or labor done. The only stock issued upon a consideration was that to Taylor in part payment of his property.

The defendants, on or about July 25, 1938, conveyed by warranty deed to plaintiff, Memory Grove Cemetery, Inc., Blocks 1 and 2 of Taylor Estates, being a subdivision of the S.½ of the N.W.¼ of the S.W.¼ and the N.½ of the S.W.¼ of the S.W.¼ of Section 1, Township 1 North, Range 2 East, Gila & Salt River Base and Meridian, Maricopa County, Arizona.

This deed was given pursuant to the terms of an escrow agreement, dated May 6, 1938, between Melvin Taylor as first party and E. O. Castle and Charlie W. Clark as second parties. The agreement stipulates the premises are to be subdivided and operated for cemetery purposes by and through a corporation to be organized by such parties; that same shall be paid for with 23% of such corporation's capital stock and a promissory note for $6,000, payable to Melvin Taylor on or before June 1, 1948, secured by a realty mortgage; that upon the delivery of such note and mortgage and

capital stock to Melvin Taylor the deed should be delivered by the escrow holder to the second parties, or their assigns. The premises at the time, as the agreement recites, were "subject to a first mortgage to the State of Arizona, and all accrued taxes," which "Second parties, or their assigns, hereby assume and agree to pay. . . . "

The plaintiff corporation was the assignee of this agreement dated May 6, 1938 and, by its terms, took on its burdens. Such agreement contains the following provision:

"Time is of the essence of this agreement and upon the violation of any of the terms hereof all right, title and interest of second parties or their assigns, in and to said premises shall be forfeited and first party shall be entitled to the possession of said premises and second parties, or their assigns, upon such violation, agree to deliver possession of said premises to first party, together with a Quit Claim Deed to first party to said premises."

The trial court, after hearing the parties, rendered judgment for defendants, from which this appeal is prosecuted upon the claim that the judgment is not supported by the law or the evidence.

■ It is first asserted that the terms of the escrow agreement were completely performed and terminated when the deed to the premises was executed and delivered to the Memory Grove Cemetery, Inc.; that by such act the latter became the absolute owner of the property, subject only to the taxes and mortgage liens thereon.

The evidence was that the back taxes, in the sum of $2,829.60, which the grantee in deed assumed and agreed to pay, were not paid but remained a lien on the premises; also that the mortgage to the State of Arizona, amounting to nearly $10,000 principal and interest, had not been paid or otherwise taken care

of at the time of the trial. It is true the escrow agreement does not specifically state that the taxes and mortgage against the premises should be paid at once by the second parties, or their assigns, but since both were long past due and the premises were subject to be sold for them at any time, the obligation undertaken was immediate, if necessary to protect the property, and not at the pleasure of the second parties.

The second assignment is that the court was in error in holding that the breach of the contract was a ground for cancellation of the warranty deed. This might be true in the absence of the provisions of the contract itself quoted above forfeiting all rights thereunder for violation of its terms.

It is a fact that the corporation's assets, and all of them, consisted of the parcel of land conveyed to it by the Taylors. Before this land was conveyed, it belonged to the Taylors. In turning it over to the corporation they received back from it only pieces of paper of a nominal value. If these instruments had any value it was due to the fact that they were backed by assets contributed to the corporation by the Taylors. In other words, the Taylors were being paid for the land out of their own property. The note they received was secured by a mortgage on the land they had conveyed to the corporation. In view of the situation and the stipulation in the contract to the effect that Castle and Clark, or their assigns, would forfeit all right, title and interest in and to the premises upon the violation of any of the terms of the contract, and the further agreement that upon such violation occurring they would redeliver possession of the premises to the Taylors, together with a quitclaim deed of the property, we have concluded that the contract between the parties by its own terms authorized its cancellation upon the failure of the corporation, or its assignors (Castle and Clark), to pay the taxes and

the mortgage on the property assumed by their contract. This view óf the situation does not ignore the contentions of plaintiff that before a party may rescind a contract he must return, or offer to return, the consideration he has received therefor, for in this case we think it is quite conclusive that the Taylors were paid nothing of value for their property either by the corporation or by the promoters thereof. The promoters of this scheme of high finance at the expense of the Taylors certainly would not be in a position to complain of the judgment, and since the corporation, Memory Grove Cemetery, Inc., is in no better position its claim must be denied.

The judgment of the lower court is affirmed.

McALISTER, C. J., and STANFORD, J., concur.